## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DWIGHT DURAN, et al.,**

       Plaintiffs,

v.                                                     1:77-cv-00721-KG-KK

**MICHELLE LUJAN GRISHAM,**
**Governor, et al.,**

       Defendants.

### SECOND REVISED SETTLEMENT AGREEMENT

The parties to this action held settlement conferences before United States Magistrate Judge Steven C. Yarbrough on February 25, 2019, March 29, 2019, and April 30, 2019, in an effort to resolve the disputed issues in this case. As a result of the settlement conferences, the parties reached an agreement which they reduced to writing and executed on the 14th day of May, 2019. Following a hearing with United States Magistrate Judge Kirtan Khalsa on June 11, 2019, the parties agreed to clarify certain terms of their agreement. The parties incorporated those clarifications into a Revised Settlement Agreement and they, through their undersigned counsel, executed the Revised Settlement Agreement on August 14, 2019. Following the Court's preliminary approval of the Revised Settlement Agreement on September 5, 2019, the parties agreed to certain modifications to the Revised Settlement Agreement, which have been incorporated into this Second Revised Settlement Agreement. This Second Revised Settlement Agreement (referred to herein as the "Revised Settlement Agreement") is now the operative version of the Settlement Agreement and it supersedes the May 14, 2019, and August 14, 2019, versions of the Agreement.

1

Exhibit C

1.    The New Mexico Corrections Department ("NMCD") agrees to take the following measures to reduce overcrowding and prevent further overcrowding in the future:

    a.    NMCD will ensure that each inmate housed in a dormitory or multiple occupancy room will have no less than 50 square feet of combined living and sleeping space, excluding dayrooms and bathrooms.

    b.    NMCD will take the following steps to reduce the number of inmates in the following facilities:

        i.    Northwest New Mexico Correctional Facility (NWNMCF) – Within 18 months from entry of this Court's preliminary approval order, NMCD will reduce NWNMCF's rated capacity from 748 inmates to 673 inmates and will not exceed the new rated capacity except as provided in this Revised Settlement Agreement. NMCD will accomplish this change by transferring at least 75 inmates from the dormitories to other New Mexico facilities with adequate space. Plaintiffs agree that by complying with this subparagraph (1)(b)(i), NMCD will have established at least 50 square feet of combined living and sleeping space, excluding dayrooms and bathrooms.

        ii.    Springer Correctional Center (SCC) – Within 18 months from the entry of this Court's preliminary approval order, NMCD will reduce SCC's rated capacity from 437 inmates to 308 inmates and will not exceed the new rated capacity except as provided in this Revised Settlement Agreement. NMCD will accomplish this change by transferring at least 129 inmates from the dormitories to other New Mexico facilities with adequate space. Plaintiffs agree that by complying with this subparagraph (1)(b)(ii), NMCD will have

established at least 50 square feet of combined living and sleeping space, excluding dayrooms and bathrooms.

iii.  Western New Mexico Correctional Facility (WNMCF) – Within 18 months from entry of this Court's preliminary approval order, NMCD will reduce WNMCF's rated capacity from 393 inmates to 353 inmates and will not exceed the new rated capacity except as provided in this Revised Settlement Agreement. NMCD will accomplish this change by transferring at least 40 inmates from the dormitories and multiple occupancy rooms at WNMCF to other New Mexico facilities with adequate space. Plaintiffs agree that by complying with this subparagraph (1)(b)(iii), NMCD will have established at least 50 square feet of combined living and sleeping space, excluding dayrooms and bathrooms.

iv.  Otero County Prison Facility (OCPF) – Within 18 months from entry of this Court's preliminary approval order, NMCD will reduce OCPF's rated capacity from 647 inmates to 607 inmates and will not exceed the new rated capacity except as provided in this Revised Settlement Agreement. NMCD will accomplish this change by transferring as least 40 inmates from the dormitories to other New Mexico facilities with adequate space. Plaintiffs agree that by complying with this subparagraph (1)(b)(iv), NMCD will have established at least 50 square feet of combined living and sleeping space, excluding dayrooms and bathrooms.

v.  Once NMCD has reduced the number of inmates in dormitories as provided in subparagraphs (1)(b)(i)-(iv) above, for purposes of disengagement, it will

maintain the reduced number of inmates resulting from those moves for a period of at least six months. Defendants shall not make a motion for substantial compliance with this provision until the end of that six month period.

c. NMCD will not house more than one inmate in a cell unless that cell contains at least 120 square feet, and such cells must allow prisoners direct access to hygiene facilities without assistance from a staff member.

   i. Exception to subparagraph (1)(c): The S-Unit (now HU3) at WNMCF may be used for double occupancy housing, but because these rooms do not contain toilets, sinks, or any running water, the doors to these rooms must remain open at all times unless there is a bona fide emergency or an occupant requests that his or her door be locked. In these events, care must be taken to unlock the door promptly whenever any occupant of a locked room requests that the door be unlocked. An emergency is defined as a circumstance caused by a riot, fire, or similar event not caused intentionally by Defendants, their agents, or employees.

d. Areas, including dayrooms, not designed for housing prisoners may be utilized for the housing of prisoners only as provided in this Revised Settlement Agreement.

   i. From time to time, NMCD may need to place prisoners in dayrooms on a temporary basis to accommodate increasing population levels while other alternatives are developed.

   ii. NMCD may house prisoners in dayrooms only if the following conditions are met:

4

1.  When a need arises for prisoners to be housed in any dayroom, if vacancies exist at any minimum or medium security facility, NMCD shall make conscientious efforts through the application of its classification procedures in operation at that time to identify medium security prisoners eligible for reclassification and reassignment to minimum security facilities or reassignment to other medium security facilities where non-dayroom beds are available. In order to accomplish this objective, NMCD shall notify caseworkers in all medium security facilities of the need to evaluate likely candidates for reclassification and reassignment as promptly as possible, consistent with the normal and efficient operation of the classification process.

2.  Only dayrooms in general population medium or minimum security housing units are utilized to house prisoners; provided, however, that dayrooms in the Reception and Diagnostic Centers for male and female inmates may be used to house prisoners whose preliminary classification review by someone trained in classification procedures indicates that those prisoners can be housed appropriately in a dayroom setting. This review shall consist, at a minimum, of (a) the assignment of the prisoner to a cell for a period of at least three days prior to the prisoner's assignment to a dayroom, (b) an opportunity for the prisoner to meet privately with the classification person to discuss any concerns the prisoner may have

5

concerning the prisoner's possible assignment to a dayroom, and (c) a documented preliminary determination that the prisoner can be housed appropriately in a dayroom.

3. No more than five prisoners per dayroom shall be assigned to dayrooms in any facility and the dayroom housing must provide a minimum of 50 square feet of combined living and sleeping space per inmate (excluding the cell left open for hygiene, as set forth below).

4. One cell in any pod in which prisoners are housed in the dayroom must be vacated so that the hygiene facilities in that cell are available for use by prisoners housed in the dayroom. This provision shall not apply if the prisoners housed in the dayroom have direct access without assistance from a staff member to suitable hygiene facilities at all times.

5. No individual prisoner is housed in a dayroom for more than 120 consecutive days.

6. No general population prisoner classified as maximum or close custody is housed in a dayroom.

iii. NMCD may not house more than 120% of the design capacity at a particular facility. NMCD may not house a total of more than 500 prisoners for the entire prison system in dayrooms.

iv. Whenever NMCD houses inmates in dayrooms pursuant to this Revised Settlement Agreement, NMCD shall notify Plaintiffs' counsel in writing

6

prior to doing so if reasonably possible and in no event later than the 10th day of the month following the housing of inmates in dayrooms.

    e.   Notwithstanding any other provisions in this Revised Settlement Agreement, Defendants shall not make a motion for substantial compliance with subparagraphs (1)(a), (c) or (d) unless and until they have been found to be in substantial compliance with respect to all provisions of subparagraph (1)(b).

2.   NMCD has initiated a study, which is being performed by the Institute for Social Research ("ISR"). The ISR study is assessing the potential benefits of revising the classification process, including establishing separate classification systems for male and female inmates. NMCD will ensure that the ISR study is completed and implemented and will pay Dr. James Austin his hourly rate of $175 per hour, up to $20,000, to provide input to ISR on these matters. Compliance with this provision is established upon the completion and substantial implementation of the ISR study. Plaintiffs and Defendants may agree that NMCD has complied with this provision and submit a stipulated order to that effect. In the event that Defendants have been found to be in sustained compliance with all other provisions of this Revised Settlement Agreement except this paragraph 2, then Plaintiffs' counsel will limit their monitoring relating to this Revised Settlement Agreement to matters directly related to the completion and implementation of the ISR study.

3.   NMCD will conduct at least two hiring fairs and host at least one satellite academy, which shall be undertaken in different locations around the state, in each of the two years following the date of the Court's final approval of this Revised Settlement Agreement.

4.   To decrease staff vacancies, within three months of the entry of this Court's final approval order, NMCD will adopt new hiring policies that reevaluate the physical fitness needs for

various positions with a goal towards enlarging the applicant pool. These new policies will be provided to the Plaintiffs and to the Court.

5.    Within three months of the entry of this Court's final approval order, and consistent with the limitations provided in NMSA 1978, §§ 33-2-34 (E) and (F), NMCD will allow inmates to receive one month good time lump sum awards ("LSAs") for each individual stage of the Residential Drug Abuse Program. The stages of this program currently include: (1) Orientation and Rational Thinking; (2) Criminal Lifestyle-Living With Others; and (3) Recovery, Maintenance, and Transition Living.

6.    Within three months of the entry of this Court's final approval order, NMCD will modify its LSA policy prohibiting inmates who are within 90 days of their release date from being awarded LSAs. Inmates who are 45 days or more from their release date shall be eligible for LSAs.

7.    NMCD will meet American Correctional Association ("ACA") standards regarding toilet-to-inmate ratios, and will ensure toilets are working within 48 hours of a verbal or written inmate complaint regarding plumbing problems. NMCD shall not seek a waiver of these requirements from the ACA.

8.    NMCD will meet ACA standards regarding shower-to-inmate ratios. NMCD shall not seek a waiver of these requirements from the ACA.

9.    NMCD will ensure there is an adequate supply of safe drinking water at the Springer Correctional Center. This provision is intended to address those situations in which the local municipality has raised concerns regarding the quality of the municipal water supply. If the municipal water supply is unsafe or inadequate, NMCD will provide inmates with bottled water.

10.    NMCD will retain professionally licensed exterminators to be deployed at least monthly for the duration of this Revised Settlement Agreement at WNMCF and NWNMCF to mitigate concerns about rodents and vermin at the facilities.

11.    Within eighteen months of the entry of this Court's final approval order, NMCD will retrain records staff regarding file audit reviews and good time calculations to improve the accuracy of those reviews and calculations. NMCD will provide a copy of the training materials to Plaintiffs' counsel and provide regular updates to Plaintiffs' counsel regarding the progress of this training until it is completed. Plaintiffs may not approve or disapprove of these training materials. This provision is satisfied once all records staff have been retrained.

12.    The Classification Supervisor will ensure that the Parole Board Docket Form is accurate and that it, along with the Parole Plan, is submitted to the Adult Parole Board ("Board") via e-mail no later than 90 days prior to a class member's projected release date for class members that will serve parole in New Mexico and no later than 120 days prior to the class member's projected release date if the class member will serve parole out of state. NMCD will ensure that class members are timely released on their certified release date following receipt of parole board certificate and, where applicable, when there is available space at a halfway house, transitional living center, or long-term residential treatment center. Substantial compliance with this provision means that NMCD complies with the provisions of this section at least 85% of the time. Beginning no later than thirty days after the entry of this Court's final approval order, NMCD will provide Plaintiffs' counsel with monthly reports documenting production of the Parole Board Docket Form, Parole Plan, and release date for all class members.

13. NMCD will not take away good time or otherwise discipline class members for reporting in good faith alleged PREA violations, as provided in PREA Standard 28 C.F.R.115.78(f). However, NMCD does not waive its rights under PREA Standard 28 C.F.R. 115.52(g).

14. All men confined to a medium or higher custody facility and all women of any classification level in NMCD custody will receive the benefits of this Revised Settlement Agreement.

15. Medical/Geriatric Parole – NMCD shall identify geriatric, permanently incapacitated, and terminally ill class members eligible for geriatric or medical parole based on rules established by the Board and give notice to those inmates no later than December 31, 2019 and on an annual basis thereafter. NMCD shall forward an application and documentation in support of parole eligibility to the Board within thirty days of receipt of an application from a class member. The documentation shall include information concerning the class member's age, medical history and prognosis, institutional behavior and adjustment and criminal history. The class member or his or her representative may submit an application to the Board. NMCD will adhere to these provisions for the duration of this Revised Settlement Agreement.

16. With respect to any parolee who is a class member at the time he or she is released, who comes under the supervision of the probation and parole department, and serves one-half of his or her required parole time without a major violation, NMCD will provide a written recommendation to the Board that such parolee's parole time be reduced by one-half. This provision is not intended to expand the scope of the class and does not apply to:

    a. Sex offenders;

    b. Serious violent offenders; and

        c.  Offenders who are serving sentences for a DWI sixth or higher.

17.     As remedial relief, NMCD agrees to award one month's worth of good time consistent with NMSA 1978, § 33-2-34(A) (2015) to the following inmates: (1) any inmate who was housed for at least 60 days in dormitories at NWNMCF from March 1, 2014 until the date the Court finds that Defendants are in substantial compliance with subparagraph (1)(b)(i) of this Revised Settlement Agreement; (2) any inmate who was housed for at least 60 days at SCC from October 1, 2016 until the date the Court finds that Defendants are in substantial compliance with subparagraph (1)(b)(ii) of this Revised Settlement Agreement; (3) any inmate housed for at least 60 days in dormitories at WNMCF from October 1, 2016 until the date the Court finds Defendants are in substantial compliance with subparagraph (1)(b)(iii) of this Revised Settlement Agreement; and (4) any inmate housed for at least 60 days in dormitories at OCPF from October 1, 2016 until the date the Court finds Defendants are in substantial compliance with subparagraph (1)(b)(iv) of this Revised Settlement Agreement. Only one award will be made to eligible inmates. Excluded from this provision are any inmates who have a sustained finding of assault against a staff member. Also excluded from this provision are those inmates who have less than 45 days of time left to serve on their sentence as measured from the entry of this Court's final approval order. These good time awards shall be made within 30 days of this Court's final approval order. For inmates who become eligible for these good time awards after the date of the final approval order, the awards shall be made within 30 days of the date the inmate becomes eligible.

18.     Unless otherwise stated in this Revised Settlement Agreement, each provision will go into effect on the date this Court enters its final approval order.

19.  The parties will agree to an access order that reasonably permits Plaintiffs to monitor compliance with this Revised Settlement Agreement. If the parties cannot agree to an access order by the date upon which objections to the Revised Settlement Agreement are due to the Court, the parties will present competing access orders to the Court, and the Court will adopt an access order of its choosing.

20.  The parties agree to collaborate in the exchange of information necessary to ensure the Defendants' compliance with and the expeditious resolution of this Revised Settlement Agreement. Where absolutely necessary, and only after conferring with Defendants, Plaintiffs may seek formal discovery through specific requests that address the terms of this Revised Settlement Agreement. The Defendants do not relinquish their right to object or otherwise seek limitations to the proffered discovery. Any dispute regarding discovery will be resolved by the Court.

21.  When the Defendants believe they have substantially complied with any of the items set forth in this Revised Settlement Agreement, they will notify the Plaintiffs in writing. The notice will state the basis for asserting substantial compliance. At any time after thirty days from this notice, the Defendants may file a motion for a finding of substantial compliance as to the item(s) addressed in the notice. If the motion is contested, the parties will request that the Court hold a hearing and enter its findings and conclusions. If the Court determines that the Defendants have substantially complied with the item(s) of this Revised Settlement Agreement to which the motion pertains, it will enter an order finding substantial compliance as to the item(s) to which the motion pertains. If Defendants maintain sustained compliance for 6 months from the date of the Court's order finding substantial compliance, and the Defendants' sustained compliance is unchallenged, the Court's will enter an order

12

terminating its oversight of and disengaging such item(s). If the Plaintiffs challenge Defendants' proffer of sustained compliance, the Court will resolve the dispute after a hearing. Upon a determination of sustained compliance as to an item and the Court's resulting termination of the oversight of and disengagement of that item, either by agreement of the parties or as a result of the Court's determination, the Defendants will no longer be required to report on that item or compensate the Plaintiffs for attorney, paralegal, or investigator time spent monitoring that item.

22.   Upon the Court's termination of its oversight of and the disengagement of all of the items in this Revised Settlement Agreement, Defendants will be deemed to have complied with the terms of this Revised Settlement Agreement and all provisions of the Revised Settlement Agreement and all prior consent decrees will be vacated.

23.   Defendants agree not to file a motion to terminate pursuant to the PLRA until they have achieved sustained compliance with the provisions of this Revised Settlement Agreement, as provided in Section 21. Plaintiffs agree not to seek expansion of this Revised Settlement Agreement or to monitor facilities beyond the scope of this Revised Settlement Agreement.

24.   Plaintiffs agree that NMCD has no authority over the Adult Parole Board and do not now, and will not in the future, make any claims that this Revised Settlement Agreement is being violated due to the conduct, actions, or decisions of the Board.

25.   The parties agree not to move to modify this Revised Settlement Agreement.

26.   Plaintiffs' counsel reserve the right to argue for an award of attorneys' fees and expenses incurred for their reasonable and necessary work in negotiating and securing this Revised Settlement Agreement, as well as any attorneys' fees and expenses for prior work in this litigation, and Defendants reserve the right to object to those attorneys' fees and expenses.

27. The Court shall retain jurisdiction over any dispute that may arise with respect to the interpretation or enforcement of this Revised Settlement Agreement. The parties agree that if a dispute arises regarding interpretation or enforcement of this Revised Settlement Agreement, they must first confer prior to filing any motion. Except, in the case of an emergency, a party may file an emergency motion.

28. Based upon the entire record, the parties stipulate and jointly request that the Court find that the relief set forth in this Revised Settlement Agreement is narrowly drawn, extends no further than necessary to correct the violation of Plaintiffs' federal rights, and is the least intrusive means necessary to correct the violation of Plaintiffs' federal rights.

29. Plaintiffs agree that this Revised Settlement Agreement constitutes the entire set of obligations and duties necessary for Defendants' full release from this litigation and all attendant Court orders in both the *Duran* and *Klatt* lawsuits.

30. The intention of this Revised Settlement Agreement is to allow for final resolution of this litigation and to allow Defendants to dissolve the consent decree in this litigation.

Executed: February 10, 2020

Alexandra Freedman Smith
LAW OFFICE OF ALEXANDRA
FREEDMAN SMITH, LLC

Katherine Loewe
LAW OFFICE OF RYAN J. VILLA

*Counsel for Plaintiffs*

Matthew L. Garcia
GENERAL COUNSEL FOR GOVERNOR
MICHELLE LUJAN GRISHAM

Alisha Tafoya Lucero
CABINET SECRETARY FOR
THE NEW MEXICO CORRECTIONS
DEPARTMENT

Jennifer Saavedra
ASSISTANT NEW MEXICO ATTORNEY
GENERAL

*Defendants and Counsel for Defendants*