IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SUSIE ZAPATA and MONICA GARCIA,

    Plaintiffs,

v.                                                 Case No. 1:21-CV-00083 MV/JFR

LEON MARTINEZ, ROBERTA LUCERO-ORTEGA,
ARTHUR SANCHEZ, BERLEEN ESTEVAN,
and SUMMIT FOOD SERVICE, LLC,

    Defendants,

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LEON MARTINEZ'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Susie Zapata and Monica Garcia, by and through their counsel of record, Steven Robert Allen (New Mexico Prison & Jail Project), hereby respond to Defendant Martinez's Motion for Summary Judgment and respectfully ask this Court to deny this Motion.[1] In support of their response, Plaintiffs submit the following:

### I.    INTRODUCTION

Susie and Monica were incarcerated at Western New Mexico Correctional Facility in Grants, New Mexico during a dangerous, widespread rodent infestation at the prison that endured for many years. The infestation was centered in and around the prison's kitchen where Susie and Monica worked during significant portions of their incarceration.

---

[1] Plaintiffs note Defendant Martinez failed to make any attempt to determine Plaintiffs' position on this Motion, pursuant to D.N.M.LR-Civ. 7.1. ("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied.")

Almost everyone, at some point or another in their lives, will experience the inconvenience of a mouse or two in the place where they live or work. Plaintiffs' amended complaint alleges nothing so mundane. Susie and Monica were forced to live, work, eat and sleep in the middle of an extensive infestation that posed an obvious and substantial threat to their health and well-being. The facts are so shocking that they would be difficult to believe if they weren't so well-documented in voluminous records and witness testimony.

During his tenure as warden, Defendant Martinez was responsible for ensuring the safety and well-being of Susie and Monica. He failed profoundly to meet this responsibility. Defendant Martinez was well-aware of the rodent infestation, and he knew how dangerous it was. He was required to take reasonable steps to address the infestation and he failed to do so. Consequently, Defendant Martinez is individually responsible for the violation of Susie and Monica's constitutional rights under the Eighth Amendment to the U.S. Constitution.

Defendant's Motion ignores the numerous critical disputes of material facts in this case while also fundamentally misapplying key legal concepts and judicial precedent in support of his legal arguments. For these reasons, as demonstrated below, summary judgment should be denied.

## II.     DISPUTED MATERIAL FACTS ("DMFs")

Plaintiff disputes Defendants' "Statement of Undisputed Facts" as Disputed Material Facts ("DMF") in the following manner:

1. Plaintiffs admit the factual contentions in Paragraph 1.
2. Plaintiffs admit the factual contentions in Paragraph 2.
3. Plaintiffs admit the factual contentions in Paragraph 3.

4. Plaintiffs admit the factual contentions in Paragraph 4 but dispute they are material to Defendant's claim preclusion argument.

5. Plaintiffs admit the factual contentions in Paragraph 5 but dispute they are material to Defendant's claim preclusion argument.

6. Plaintiffs admit the factual contentions in Paragraph 6 but dispute they are material to Defendant's claim preclusion argument. The factual contentions in this paragraph *are* material to Defendant's assertion of the defense of qualified immunity because they undermine his contention that he was not deliberately indifferent to the substantial risk of serious harm posed to Plaintiffs by the rodent infestation.

7. Plaintiffs admit the factual contentions in Paragraph 7 but dispute they are material to Defendant's claim preclusion argument. These factual contentions *are* material to Defendant's assertion of the defense of qualified immunity because they undermine his contention that he was not deliberately indifferent to the substantial risk of serious harm posed to Plaintiffs by the rodent infestation.

8. Plaintiffs admit the factual contentions in Paragraph 8 but dispute they are material to Defendant's claim preclusion argument.

9. Plaintiffs admit the factual contentions in Paragraph 9 but dispute they are material to Defendant's claim preclusion argument.

10. Plaintiffs admit the factual contentions in Paragraph 10 but dispute they are material to Defendant's claim preclusion argument.

11. Plaintiffs admit the factual contentions in Paragraph 11 but dispute they are material to Defendant's claim preclusion argument.

12. Plaintiffs admit the factual contentions in Paragraph 12 but dispute they are material to Defendant's claim preclusion argument.

13. Plaintiffs admit the factual contentions in Paragraph 13 but dispute they are material to Defendant's claim preclusion argument.

14. Plaintiffs admit the factual contentions in Paragraph 14.

15. Plaintiffs admit the factual contentions in Paragraph 15.

16. Plaintiffs admit the factual contentions in Paragraph 16.

17. Plaintiffs admit the factual contentions in Paragraph 17.

18. Plaintiffs admit the factual contentions in Paragraph 18 but dispute they are material to Defendant's claim preclusion argument. However, the factual contentions in this paragraph *are* material to Defendant's assertion of the defense of qualified immunity because they undermine his contention that he was not deliberately indifferent to the substantial risk of serious harm posed to Plaintiffs by the rodent infestation.

19. Plaintiffs dispute the factual contentions in Paragraph 19. Neither Plaintiff is a current member of the *Duran* class. *See* DMF ¶¶ 2, 3 and 17.

20. Plaintiffs admit the factual contentions in Paragraph 20, but they note that, in failing to address the rodent infestation, Defendant violated NMCD policy and failed to adequately perform his job as warden of the prison.

21. Plaintiffs admit the factual contentions in Paragraph 21.

22. Plaintiffs admit the factual contentions in Paragraph 22.

23. Plaintiffs dispute the factual contentions in Paragraph 23. Because of the extensive nature of the rodent infestation at the prison, and the numerous declarations from staff and inmates

regarding rodent presence concentrated in the kitchen area, Defendant Martinez would have seen more than one mouse in his 20 months of employment as warden. *See* Ex. 2 at 36:3-7, 60:25, 61:1-25, 62:1-24; Ex. 3 at 8:19-25, 9:1-21; Ex. 4 at 15; Ex. 5 at *Declaration of Evangeline Chavez* ¶16, *Declaration of Shannon McDevitt* ¶¶ 6, 17, *Declaration of Ladonna Evans* ¶¶ 8-10, *Declaration of Jeannette Stinnett* ¶¶ 7, 10-11, *Declaration of Stacy Bond* ¶¶ 7, 16.

24. Plaintiffs dispute the factual contention in Paragraph 24. Defendant was told by several staff members at the prison that there was a problem with rodents at the prison. Even if no one had told him, he knew there was a problem because it was obvious. *Id*.

25. Plaintiffs dispute the factual contentions in Paragraph 25. Given the magnitude of the rodent infestation at the prison while Defendant served as warden, he would have known that rodents were present in large numbers throughout the facility. *See* Exhibits 2-6.

26. Plaintiffs admit the factual contentions in Paragraph 26 but dispute the implication that the few times the kitchen was cleaned in this manner was in any way effective in addressing the rodent infestation at the prison. Plaintiffs and multiple current and former inmates attest that deep cleanings of the kitchen only occurred before inspections were expected. *Id*.

27. Plaintiffs dispute the factual contention in Paragraph 27. In his deposition, Defendant Martinez could not clearly remember events in question. Furthermore, Defendant expressed a general skepticism toward all inmate grievances. Ex. 8 at 61:1-22.

28. Plaintiffs dispute the factual contention in Paragraph 28. Defendant expressed in his deposition that he didn't believe there was an infestation at the prison, despite all evidence to the contrary. Ex. 8 at 56:1-3, 13-15.

29. Plaintiffs admit the factual contentions in Paragraph 29 regarding discussions with Defendant Sanchez, but dispute the implication that the use of sticky traps was in any way useful in addressing the infestation. *See* Ex. 2 at 35:1-25, 36:3-7, 37:13-18; Ex. 5 at *Declaration of Evangeline Chavez* ¶ 17, *Declaration of Shannon McDevitt* ¶¶ 17, 30.

30. Plaintiffs admit the factual contention in Paragraph 30, but dispute the implication that the live traps were in any way useful in addressing the rodent infestation at the prison. *Id*.

31. Plaintiffs admit the factual contention in Paragraph 31.

32. Plaintiffs admit the factual contention in Paragraph 32.

33. Plaintiffs admit the factual contentions in Paragraph 33.

34. Plaintiffs admit the factual contentions in Paragraph 34 but dispute the implication that the minimal maintenance work that is described was in any way useful in addressing the rodent infestation at the prison. *Id*.

35. Plaintiffs admit the factual contentions in Paragraph 35 but dispute the implication that this single report has any bearing on the magnitude of the rodent problem at WNMCF. *Id*.

### III.     ADDITIONAL MATERIAL FACTS ("AMFs")

A. During the years Defendant Martinez served as warden, and while Plaintiffs were incarcerated there, an extensive rodent infestation existed at the women's prison. Exhibits 2-7, 9 and 10.

B. The infestation was particularly rampant in the prison's food services areas where Plaintiffs worked. Ex. 2 at 68:20-25, 69:1-15; Ex. 3 at 11:8-23, 12:8-19; Ex. 4; Ex. 5-7.

C. Rodent droppings and actual rodents, living or dead, were frequently found in food served to inmates at the prison. Ex. 4; Ex. 5 at *Declaration of Evangeline Chavez* ¶ 18-19, *Declaration of Ladonna Evans* ¶ 8-9, *Declaration of Jeannette Stinnett*, ¶ 7-8; Ex. 6.

D. Because of the magnitude of the infestation, inmates at the facility feared for their physical safety. Ex. 5 at *Declaration of Evangeline Chavez* ¶¶ 12, 22-23, *Declaration of Shannon McDevitt* ¶ 31, *Declaration of Ladonna Evans* ¶ 36-37, *Declaration of Jeannette Stinnett* ¶ 18.

E. Every prison staff member, from the warden on down, knew that a large rodent infestation can pose a serious health risk to inmates. Ex. 5 at *Declaration of Evangeline Chavez* ¶¶ 12, 22-23, *Declaration of Shannon McDevitt* ¶ 31, *Declaration of Ladonna Evans* ¶ 36-37, *Declaration of Jeannette Stinnett* ¶ 18.

F. Defendant Martinez denies the magnitude and seriousness of the infestation at the prison during his tenure as warden. Ex. 8 at 56:1-3, 13-15.

G. Defendant Martinez denies knowing about the magnitude of the infestation at the prison during his tenure as warden. *Id*.

H. Defendant Martinez knew about the rodent infestation because it was obvious to everyone who worked or was incarcerated at the prison. Ex. 2 at 68:20-25, 69:1-15; Ex. 3 at 11:8-23, 12:8-19; Ex. 4; Ex. 5-6.

I. Defendant Martinez also was made aware of the rodent problem directly by Berleen Estevan. Ex. 2 at 40:1-7, 113:12-25, 114:1-3.

J. Defendant Martinez also was made aware of the rodent problem because it was a subject of discussion in leadership meetings at the prison. Ex. 2 at 40:15-25, 41:1-9; Ex. 3 at 19:12-15.

K. Defendant Martinez also was made aware of the rodent problem because, during his tenure as warden, the prison was cited by NMED for violations due to the presence of rodents in and around food service. Ex. 10.

L. During Martinez's tenure as warden, Defendant Sanchez was responsible for ensuring effective pest control at the prison. Ex. 9 at 11.

M. Defendant Sanchez knew rodents presented a problem throughout the prison. Ex. 4.

N. Defendant Sanchez sometimes reported directly to Defendant Martinez. Ex. 8 at 109:19-25, 110:1-16.

O. Even when he did not report directly to him, Defendant Martinez received reports from him and other information from him through the Deputy Warden. Ex. 11.

P. As warden, Defendant Martinez was ultimately responsible for the health and safety of all inmates at the prison. Ex. 8 at 18:19-25, 19:1-13.

Q. While he served as warden, Defendant Martinez knew that the minimal efforts taken by his staff to address the rodent infestation were completely ineffective. Ex. 2 at 79:3-13.

R. Defendant Martinez could have taken reasonable steps to ensure that the rodent infestation at the prison was adequately addressed but he failed to do so. Ex. 2 at 40:1-7, 43:7-25, 44:1-15, 113:12-25, 114:1-15, Ex. 6 at ¶ 9.

S. In fact, Defendant Martinez actively took steps to cover up the infestation by not allowing inspectors to perform unannounced visits as would occur in a commercial food

establishment. Ex. 7 at 58:3-15, Ex. 5 at *Declaration of Evangeline Chavez* ¶ 9, *Declaration of Shannon McDevitt* ¶ 7-8, *Declaration of Ladonna Evans* ¶ 11-14, *Declaration of Jeannette Stinnett* ¶ 12.

## IV.   GOVERNING LAW

In a summary judgment motion, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), aff'd, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-48 (1986). Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kauss*, 985 F. Supp at 1281.

V.     ARGUMENT

Defendant Martinez presents two arguments in support of his Motion: 1) The *Duran* Settlement Agreement prohibits Plaintiffs from asserting their claims based on the doctrine of claim preclusion; and 2) Defendant is entitled to qualified immunity. Both of Defendant's arguments are invalid.

### a. Plaintiffs' claims are not barred by the claim preclusion doctrine.[2]

Defendant's Motion falsely asserts that the *Duran* consent decree bars Plaintiffs from bringing this litigation based on the doctrine of claim preclusion. "Under Tenth Circuit law, claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *MACTEC Inc. v. Gorelick*, 427 F.3d 821 (10th Cir. 2005); *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008). To foreclose Plaintiffs' lawsuit based on claim preclusion, Defendant Martinez bears the burden of proving all three elements. *Id*. He has failed to prove any of the required elements.

1. The *Duran* settlement agreement does not constitute a final judgment on the merits regarding the claims presented in Plaintiffs' lawsuit.

While the *Duran* consent decree has been in existence for decades, the issue of rodents did not receive a final judgment from the Court until the Court issued its Order Granting Final Approval of Second Revised Settlement Agreement on February 14, 2020. DMF ¶¶ 14-16.

---

[2] Defendant's Motion asserts that Plaintiffs' claims are barred by *res judicata*, an umbrella term that includes the doctrines of both claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008). Since his Motion only addresses the required elements of claim preclusion, Plaintiffs have focused on addressing claim preclusion in this Response. They note, however, that Defendant would also fail in attempting to block the present lawsuit based on issue preclusion. This is because the fundamental issues at the heart of the present lawsuit – whether there was a rodent infestation at the prison and whether Defendant's failure to address it violated Plaintiffs' rights – were never addressed in the *Duran* litigation.

Plaintiffs were released from the prison in 2019. DMF ¶¶ 2-3. "Once decided in a court of competent jurisdiction, merits of a legal claim are not subject to redetermination in another forum." *N. Nat. Gas Co. v. Grounds*, 931 F.2d 678, 681 (10th Cir. 1991). Defendant Martinez acknowledges that the Second Revised Settlement Agreement in *Duran* is the relevant "final judgment" for assessing whether he has met his burden of proving the first required element of the claim preclusion doctrine. *Defendant's Motion* [DOC 78] at 12-13. Yet his Motion fails to note that this final judgment occurred after Plaintiffs were released from the prison. For claim preclusion to function as a bar to a future lawsuit, the final judgment in question needs to have occurred *prior* to the incidents giving rise to the claims in that future lawsuit. *MACTEC Inc. v. Gorelick*, 427 F.3d 821 (10th Cir. 2005). That clearly did not happen here. The constitutional violation suffered by Plaintiffs occurred before the Court granted any relief whatsoever to the parties in the *Duran* suit. DMF ¶¶ 14-16.

To allow claim preclusion to block Plaintiff's claims in the present lawsuit would result in a bizarre outcome. By all accounts, the minimal level of pest control at WNMCF required by the *Duran* consent decree has been functionally useless. AMF ¶ Q. But this minimal injunctive relief is doubly useless to Plaintiffs because their constitutional rights were already violated before the relevant *Duran* provisions came into effect. DMF ¶¶ 2-3, 14-16. Because the relief provided to inmates via *Duran* occurred *after* Plaintiffs were released, Defendant Martinez has failed to meet his burden of proving the first requirement of the claim preclusion doctrine. *Id.* See also *Wilkes v. Wyoming Dep't of Emp. Div. of Lab. Standards*, 314 F.3d 501, 504 (10th Cir. 2002), *as amended* (Jan. 14, 2003) (holding that claim preclusion applies only when final judgment occurred in an *earlier* action).

2. The parties in the *Duran* litigation are fundamentally different from the parties in Plaintiff's lawsuit.

For claim preclusion to function as a bar to future litigation, the parties in the previous lawsuit must be the same as the parties in the subsequent lawsuit. *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008). That simply is not the case here. Although Defendant Martinez is neither a named nor unnamed Defendant in the *Duran* litigation, he argues that "privity" exists between himself and the *Duran* Defendants. *Defendant's Motion* [DOC 78] at 14-17. "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir.1989). Here, Defendant is being sued in his individual capacity based on his specific role in violating the constitutional rights of Plaintiffs. He is being sued because he failed to do his job as warden to protect the health and well-being of Plaintiffs. Similarly, he is being sued for failing to ensure that federal and state sanitation laws, as well as NMCD's own policies, were followed at the facility that he oversaw. *Amended Complaint* [DOC 44] at 2.

Individual capacity lawsuits like the present one seek to impose personal liability on an individual person. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985). In this case, Martinez is being sued because of his specific individual failures to address the infestation. Official capacity lawsuits like the *Duran* litigation, on the other hand, impose liability on a governmental entity. *Id*. In *Duran*, the governor of New Mexico is being sued in her official capacity, which means the de facto Defendant in that lawsuit is the State of New Mexico. Because Defendant Martinez is being sued in his individual capacity, no privity exists

between him and the State of New Mexico with regard to the *Duran* litigation. *Lowell*, 878 F.2d at 1275.

Furthermore, as Defendant Martinez acknowledges, the *Duran* litigation is a class action lawsuit by current and future inmates detained in NMCD prisons. This means that Plaintiffs in the present lawsuit are not class members in *Duran*, and they were not class members when they filed the present lawsuit. Because Defendant Martinez cannot show privity between himself and the State of New Mexico, and because Plaintiffs in the present lawsuit are not *Duran* class members, Defendant has failed to meet the second prong of the claim preclusion test. *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008).

3. The cause of action in the *Duran* litigation is fundamentally different from the cause of action in Plaintiffs' lawsuit.

The most glaringly obvious reason why Defendant's claim preclusion argument fails is because the present lawsuit and the *Duran* litigation have completely different causes of action. Plaintiffs brought this lawsuit against Defendant Martinez because of his specific individual role in violating their constitutional rights under the Eighth Amendment. They seek monetary damages for the violation of their rights resulting from Defendant's failure to fulfill his duties in protecting their health and well-being. Conversely, *Duran* is an injunctive class action lawsuit that does not – and actually, *cannot* – result in individualized monetary damages for people who have been incarcerated in NMCD facilities. *See Defendant's Motion* [DOC 78], Ex. A at 1-3. The U.S. Supreme Court has held unequivocally that the kind of individualized monetary claims presented in Plaintiffs' lawsuit must proceed separately from any class action for injunctive relief because they are fundamentally distinct claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–63, 131

S. Ct. 2541, 2557–59, 180 L. Ed. 2d 374 (2011) (disallowing class certification when specific "class members would be entitled to an individualized award of monetary damages.").

A class action lawsuit is an exception to the usual rule that litigation is conducted by and on behalf of individually named parties only. *Id*. at 348. Exceptions to this rule are only allowed when individual members of the class "possess the same interest and suffer the same injury" as the class generally. *Id*. Here, Plaintiffs' specific harms, interests and remedies sought are individualized and therefore completely different from those sought by *Duran* class members as a whole. For these reasons, Defendant Martinez has likewise failed to meet the third element of the claim preclusion test.

    **b. Defendant Martinez is not entitled to qualified immunity.**

As a prison warden, Defendant Martinez enjoys the luxury of raising a qualified immunity defense. The doctrine of qualified immunity provides that "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether qualified immunity exists is a question of law. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994). Although the qualified immunity cases previously required courts to first evaluate whether a constitutional violation occurred and then turn to whether the right being violated is clearly established, the Supreme Court of the United States recently adjusted its analysis. In *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009), the Court held that the established procedure—assessing whether there was a constitutional violation first and whether the relevant law was clearly established second—"should not be regarded as an inflexible requirement." *Id*. at 813. Since Defendant's

Motion addresses whether the law was clearly established first, Plaintiffs' response will address this requirement first as well.

> 1. The Eighth Amendment right to not be subjected to a dangerous rodent infestation was clearly established when Defendant Martinez was warden.

Tenth Circuit caselaw regarding the constitutional ramifications of rodent infestations in prisons is longstanding and well-developed. The right to not be subjected to the kind of infestation that Plaintiffs were forced to live through at the women's prison has been clearly established for decades. When determining if a right is clearly established, courts look to see if the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). That said, it is not necessary to find previous cases involving fundamentally similar facts. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516, 153 L. Ed. 2d 666 (2002). In fact, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id*. at 754. The "salient question" is whether the state of the law at the time of the incident gave the defendants "fair warning" that their conduct was unconstitutional. *Id*. at 741. Once the plaintiff has established the inference that the defendant's conduct violated a clearly established constitutional right, a qualified immunity defense generally fails. See *Cannon v. City & Cty. Of Denver*, 998 F.2d 867, 870-71 (10th Cir. 1993).

Inmates are entitled to be confined in an environment which does not threaten their mental and physical well-being. *Battle v. Anderson*, 564 F.2d 388, 403 (10th Cir. 1977). Prisons are

required to provide inmates with "a healthy habilitative environment." *Id*. at 568. "This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 570–71 (10th Cir. 1980). A rodent infestation that creates unsanitary conditions in food service in a prison can rise to the level of a constitutional violation. *Id*. at 570-572 (10th Cir. 1980). In *Ramos*, the Court found that the conditions caused by a rodent infestation at a prison in Colorado were "grossly inadequate and constitutionally impermissible." *Id*. Because the Court in *Ramos* found that a rodent infestation can rise to the level of a constitutional violation, the law on this matter was clearly established during Plaintiffs' incarceration while Defendant Martinez served as prison warden. In cases where inmates and prison staff observed rodent feces and actual rodents literally in and on food being served to them "a reasonable jury could conclude that the risk of harm . . . is both substantial and obvious." *Byrd v. Hobart,* 761 F. App'x 621, 624 (7th Cir. 2019). At a minimum, the psychological harm of living in such conditions will be obvious to any jury. *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016). As illustrated below, the conditions Susie and Monica endured at the women's prison in Grants were at least as horrendous and arguably much worse than those described in *Ramos*. Because Defendant Martinez had fair warning through Tenth Circuit caselaw that his inaction regarding the rodent infestation was constitutionally impermissible, he has failed to meet the first requirement necessary for him to benefit from the defense of qualified immunity.

    2. Defendant Martinez violated Plaintiffs' constitutional rights.

By failing to address the rodent infestation at the women's prison, Defendant Martinez violated Susie and Monica's Eighth Amendment rights. To prove a constitutional violation,

Plaintiffs are required to show Defendant Martinez acted with deliberate indifference to the substantial risk of serious harm posed by the rodent infestation. *Barrie v. Grand Cty., Utah*, 119 F.3d 862, 869 (10th Cir. 1997). Deliberate indifference is a difficult standard for Plaintiffs to prove as it requires more than negligent behavior. However, it does not require that Plaintiffs prove that Defendant Martinez actually wished harm to befall them; it simply requires that they show he was indifferent in the face of an obvious risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (in which the Supreme Court explained a plaintiff may prove awareness of a substantial risk of harm through circumstantial evidence that the risk was obvious). A determination of deliberate indifference has two requirements. First, the risk to Plaintiffs must be obvious, and second, the Defendant must know of the risk and disregard it. *Farmer*, 511 U.S. 825, 114 S.Ct. 1970. Plaintiffs can show that a defendant knew of a substantial risk by circumstantial evidence, including the fact that the risk was obvious. *Id*. at 842.

While Defendant Martinez served as warden, the infestation was out of control at the prison. AMF ¶¶ A-D. People who worked or were detained at the prison saw rodents and rodent feces every day. AMF ¶ A. The infestation was concentrated in and around the prison's food service areas, where Plaintiffs worked. AMF ¶ B. Because of this, the infestation presented a profound and obvious danger to them. *Id*. Rodents continuously scurried around the kitchen and cafeteria and chewed into bags of food. *Id*. There were so many rodents in the kitchen that inmates working there sometimes felt them crawling across the tops of their feet while they worked. *Id*. Rodent nests were sometimes found in and around the kitchen, and rodent feces were often found in the food served to inmates. AMF ¶ C. Sometimes even actual rodents, alive or dead, were found in the food served to inmates. *Id*. In a vain attempt to address the infestation, Plaintiffs had to kill

rodents when they worked in the kitchen. *Id*. Most of the women incarcerated at the prison felt extreme levels of stress due to the obvious health risks posed to them by the infestation. AMF ¶ D.

The serious risk posed by a rodent infestation of this magnitude will be obvious to anyone. AMFs A-E. Our fear of rodents is ingrained in our psyches because it has been common knowledge for millennia that infestations of rodents are profoundly dangerous to human health. Even the Old Testament refers to pestilence generated by rodents, and every high school student knows that the "Black Death" wiped out a third of Europe's population and was transmitted by fleas carried by rodents. AMF E. Everyone who has lived in New Mexico for any length of time likewise knows that the deadly hantavirus is carried by rodents and is more prevalent in rural settings like the prison where Susie and Monica were detained. *Id*. The U.S. Constitution, federal and state law, and the New Mexico Corrections Department's ("NMCD's") own policies all require that excessive numbers of rodents in prisons be addressed to protect the health and well-being of inmates.

Plaintiffs' additional material facts make it crystal clear that Defendant Martinez was well-aware of the dangerous magnitude of the rodent infestation. AMF ¶¶ H-O. As warden, he was responsible for protecting the health and safety of Plaintiffs and other women incarcerated at the prison. AMF ¶ P. Defendant Martinez knew that the minimal efforts taken by prison staff to address the infestation had been ineffective. AMF ¶ Q. He was required to take reasonable steps to address the infestation at the prison, but he failed to do so, and even allowed for prison staff to cover up the infestation from inspectors. AMFs R-S. These facts clearly demonstrate Defendant Martinez

violated Plaintiffs' rights by being deliberately indifferent to the serious and obvious risk of harm posed to them by the infestation.

### VI.    CONCLUSION

Defendant Martinez failed to meet any of the elements necessary to assert claim preclusion. He likewise failed to show the elements necessary to benefit from the defense of qualified immunity. Because he has failed to meet these legal tests, and because numerous disputes of material fact exist in this litigation, Defendant is not entitled to summary judgment. A jury should evaluate Plaintiffs' claims.

WHEREFORE, Plaintiffs respectfully request the Court **DENY** Defendant's Motion.

Respectfully submitted,

*/s/ Steven Robert Allen*
NEW MEXICO PRISON AND
JAIL PROJECT
3800 Osuna Road NE, Ste 2
Albuquerque, NM 87109
Phone: (505) 515-0939
Email: steve@nmpjp.org

*Attorney for Plaintiffs*

---

I hereby certify that on July 13, 2022 a true copy of the foregoing Response was filed with the Court's electronic filing system and served by that system on all counsel of record, as well as an additional courtesy copy being provided by e-mail.

*/s/ Steven Robert Allen*